## WESTINGHOUSE ELECTRIC & MFG. CO. v. AMERICAN ENGINEERING CO.

### No. 4813.

Circuit Court of Appeals, Third Circuit.
Sept. 23, 1932.

Synnestvedt & Lechner, of Philadelphia, Pa. (Drury W. Cooper and Victor S. Beam, both of New York City, Harvey L. Lechner, of Philadelphia, Pa., and Drury W. Cooper, Jr., of New York City, of counsel), for appellant.

Charles Neave, of New York City, J. L. Stackpole and H. L. Kirkpatrick, both of Boston, Mass., and Howson & Howson, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the Westinghouse Electric & Manufacturing Company, owner of patent No. 1,558,215, applied for September 17, 1920, by Otto Aram for stoker construc-

tion, and a reissue thereof, No. 17,416, charged American Engineering Company with infringement thereof. On final hearing that court held the patents were invalid for want of invention and entered a decree dismissing the bill. Thereupon the plaintiff took this appeal.

The opinion of the lower court gives a full statement of the subject-matter of the patent and all matters pertinent to the art, and reference thereto obviates needless repetition. After a full hearing of counsel at bar and a study of the proofs and able briefs by counsel, we reach the conclusion that the trial judge committed no error. In view of complete statement in such opinion, in which all questions now raised are fully discussed, we restrict ourselves to a brief statement of our concurring views.

Aram's patent is addressed to underfeed coal feeding stokers, then a well-developed and successful art, as will be seen by reference to Underfeed Stoker Co. of America v. American Ship Windlass Co. (C. C.) 165 F. 65; American Engineering Co. v. Frederick Engineering Co. (D. C.) 274 F. 861. Aram's patent related to structural features. It disclosed no new mode of fuel feeding or burning. The stokers then in use had either iron castings or structural iron and plates. His patent was addressed to the latter type. In point of fact, Aram's device neither affected the then art nor did it go into use. No stoker of his was built. In that regard the trial judge rightly held: "He used a simple expedient well known in every kind of construction to meet a problem which was not causing very serious trouble." And added: "Here there was no very great problem to be solved when Aram applied for his patent, and nothing to indicate that, without Aram's disclosure, the really serious problem which arose later would not have been promptly met when it did appear." Such later problem came into being when the great power plants of service companies necessitated increased heating power for larger boilers. Referring to this new call and how it was met, the trial judge said: "What I refer to is the problem created by the urgent demand for increased steaming rates from boilers which brought into the field various competing types of fuel, prin-

cipally pulverized coal. To meet this competition, it became absolutely necessary for the manufacturers of stokers to develop increased heating power for the larger types of boilers. The use of preheated air accomplished something, but in the final analysis the manufacturers found that they had to build longer stokers or abandon the field of high capacity installations to their competitors. This situation began to develop about 1922 or 1923, following tests with pulverized coal made under the direction of the Bureau of Mines in 1921. It was impractical to increase the length of the tuyere boxes in stokers of the old type without change, because the low tensile strength of cast iron would have made necessary a large, heavy, cumbersome construction which would have been expensive to manufacture, would have taken up too much space when installed, and would have interfered seriously with the free use of preheated air which produced greater expansion in the structure and required unobstructed air boxes. The supporting steel beam would be the natural answer of any engineer called upon to build longer spanning members."

Referring to the way in which this new call on the art was met, the trial judge rightly said: "Where a member, because of its material or composite structure, has not sufficient strength to support itself when lengthened, the use of a beam of superior strength is as old as history. * * * I am satisfied that the developments in the art involved the application of fundamental, well-known, and familiar devices, and were mere improvements without invention."

While different in facts, the underlying principle in this case is akin to Hansen v. Slick (C. C. A.) 230 F. 627, 632, where this court said: "Modern conditions have made high engineering and mechanical skill ordinary incidents in many industries, and such technical skill is to be regarded as the incidental advance of commercial pursuits. It follows therefore that such advance in the art as results from this skill the public is entitled to avail itself of as a fruit of mechanical growth and advance."

The decree below is affirmed.